| | |
|---|---|
| DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO<br>7325 S. Potomac Street<br>Centennial, CO 80112 | |
| Plaintiff(s):<br><br>GLACIER CONSTRUCTION COMPANY, a Colorado corporation<br><br>v.<br><br>Defendant(s):<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation | ▲ COURT USE ONLY ▲<br><br>Case Number:<br><br>Div.:     Ctrm.: |
| ATTORNEYS FOR PLAINTIFF:<br>Dennis B. Polk, #8777     dbp@haplaw.net<br>Heather H. Hodgson, #33183   hsh@haplaw.net<br>HOLLEY, ALBERTSON & POLK, P.C.<br>1667 Cole Boulevard, Suite 100<br>Golden, CO 80401<br>Phone: (303) 233-7838<br>Fax: (303) 233-2860 | |

## COMPLAINT

COMES NOW the Plaintiff, by and through its attorneys, HOLLEY, ALBERTSON & POLK, P.C., and as and for a Complaint against the Defendant, states, alleges and avers as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Glacier Construction Co. ("Glacier") is a Colorado corporation in good standing with the Colorado Secretary of State, with its principal place of business located in the County of Arapahoe, State of Colorado.

2. Defendant Travelers Property Casualty Company of America ("Travelers") is a Connecticut corporation in good standing with the Connecticut Secretary of State, which maintains a regional office at 6060 South Willow Drive in Greenwood Village, County of Arapahoe, State of Colorado.

3. This Court has jurisdiction over the parties and subject matter of this dispute.


EXHIBIT C

4. Venue is proper in the County of Arapahoe pursuant to C.R.C.P. 98 because Defendant Travelers maintains a regional office in Arapahoe County, and because this matter concerns real property located in Arapahoe County.

## GENERAL ALLEGATIONS

5. Plaintiff is a general contractor specializing in water/wastewater treatment plant and pumping station type of construction.

6. On or about December 8, 2008 the City of Aurora invited Plaintiff and others to submit bids for a project referred to as "Cherry Creek Lift Station No. 15."

7. The invitation to bid described the work to be performed as certain site improvements to Cherry Creek Lift Station No. 15, a new wastewater pumping facility located at the existing site of the Cherry Creek Well Field in Arapahoe County.

8. Plaintiff submitted a bid in response to the invitation.

9. On or about February 3, 2009, Plaintiff received notice that it had been awarded the contract for the Project.

10. Shortly thereafter, Plaintiff entered into a contract with the City of Aurora ("Contract"), whereby Plaintiff agreed to complete the work at the Project pursuant to its bid.

11. Under the terms of the Contract, Plaintiff was required to comply with the City of Aurora's Insurance Requirements which included, *inter alia*, maintaining a comprehensive Commercial General Liability ("CGL") Policy.

12. In addition thereto, Plaintiff maintained a Builder's Risk Policy of Insurance, with a policy number of QT-660-9469B497-TIL-08 and a policy period of 12/01/08 - 12/01/09 (hereinafter the "Policy").

13. Defendant Travelers is the insuring company under the Policy.

14. Plaintiff commenced work at the Project in early March, 2009.

15. In May and June 2009, Plaintiff encountered significant and unexpected ground water dewatering issues during the site preparation phase of the Project.

16. The site contained significantly greater levels of ground water than indicated by the geotechnical investigative reports.

17. The increased water levels caused significant and ongoing problems including, *inter alia*,

the need to re-drill or abandon wells due to collapse, repeated pump failures and repairs, and infiltration of large quantities of sand into the well holes, causing multiple pump failures.

18. Additionally, the ground water issues resulted in the need to design and implement several additional groundwater dewatering measures, and significantly extended Plaintiff's work at the Project.

19. As a result, Plaintiff incurred significantly greater and unanticipated costs in order to complete its work at the Project.

20. On or about July 13, 2009 Plaintiff submitted a claim to Defendant for the loss pursuant to the terms of the Policy.

21. Defendant denied the claim by letter dated December 2, 2009, finding that coverage was not triggered under the terms of the Policy.

22. On or about February 16, 2010 Plaintiff, though counsel, requested that Defendant reconsider its denial of the claim.

23. Plaintiff's request for reconsideration was denied by letter dated March 24, 2010.

24. Plaintiff has complied with all of its duties and obligations under the terms of the Policy, and has complied with all requirements prior to commencement of this claim.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

25. Plaintiff incorporates, by this reference, paragraphs 1 through 24 as if set forth verbatim.

26. Defendant Travelers issued to Plaintiff a policy of insurance.

27. Despite prior demand for coverage for a covered loss, Defendant Travelers has failed or refused to provide coverage for the loss, and has otherwise failed or refused perform under the terms and provisions of the insurance policy.

28. Defendant Travels has breached its contract with the Plaintiff.

29. As a direct and proximate result of the Defendant Traveler's breach of its agreement with the Plaintiff, the Plaintiff has and continues to suffer damages.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Contract)

30. Plaintiff incorporates, by this reference paragraphs 1 through 29, as if set forth verbatim.

31. Defendant Travelers owes a duty to the Plaintiff to act in good faith and fair dealing in connection with the submission, processing and handling of claims and owes a duty to indemnify the Plaintiff from loss.

32. Defendant Travelers has breached its duty of good faith and fair dealing in one or more of the following manners:

   A. Failing to properly, adequately or fully indemnify the Plaintiff from covered losses;
   B. Failing to reasonably undertake necessary and proper investigation of claims;
   C. Failing to provide a coverage position within a reasonable time; and
   D. Otherwise failing to act in good faith.

33. Defendant Traveler's breach of its duty of good faith and fair dealing has and continues to cause Plaintiff to suffer damages.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment)

34. Plaintiffs incorporate by this reference the allegations set forth in paragraphs 1 through 33 as if set forth *verbatim*.

35. Pursuant to C.R.S. § 13-51-106, Colorado's Declaratory Judgment Relief Act, and C.R.C.P. 57, "[a]ny person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

36. By its terms, the Declaratory Judgment Relief Act is intended to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered, and this Court has the power and obligation to declare rights, status and other legal relations of the parties whether or not further relief is or could be claimed, and even in advance of time when litigation might possibly arise or before repudiation of obligation, invasion of rights, or commission of wrongs has occurred.

37. The Declaratory Judgment Relief Act may be employed to determine the liability of an insurance company to its insured under a policy of insurance, arising from a specified occurrence.

38. The Policy at issue is a Builder's Risk policy, and insures Plaintiff against certain covered risks associated with construction activities.

39. The Policy provides, in pertinent part, that Defendant will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of loss.

40. The Policy defines Covered Property as "Builders' Risk."

41. "Builders' Risk" means:

Property described in the Declarations under "Builders' Risk" owned by you or for which you are legally liable consisting of:

    a.    Buildings or structures including temporary structures while being constructed, erected or fabricated at the "job site";

    b.    Property that will become part of the buildings or structures at the "job site";

        (1) While in transit to the "job site" or temporary storage location;

        (2) While at the "Job site" or temporary storage location.

42. "Builders' Risk" does not include:

    a.    Contraband, or property in the course of illegal transit or trade;

    b.    Buildings for structures that existed at the "job site" prior to the inception of this policy;

    c.    Land (including land on which the property is located) or water.

43. The Policy also provides certain Additional Coverages including, *inter alia*, (1) "Builders' Risk" Site Preparation and (2) Expediting Costs and Additional Cost of Construction Materials and Labor.

44. Losses incurred due to "Builders' Risk" Site Preparation are covered if:

        (1) The cost of excavation, site preparation, land grading and similar work is included in the "Basic Limit of Insurance" for the "job site" as shown in the Declarations; and

  (2) You incur expenses to re-excavate the site, re-prepare the site, re-grade the land, or re-perform similar work because of loss of or damage to Covered Property by a Covered Cause of Loss.

45. Additionally, the Policy covers Expediting Costs and Additional Cost of Construction Materials and Labor as follows:

    We will pay for the following costs made necessary by a Covered Cause of Loss to Covered Property at the "job site":

    (a)   Your costs to expedite repair of Covered Property;

    (b)   Your increased cost of construction materials and labor; and

    (c)   Your costs to make changes in construction specifications.

46. The Policy excludes coverage for "hidden or latent defect, mechanical breakdown or failure…or any quality in the property that causes it to damage or destroy itself." However, the foregoing exclusion "does not apply to loss of or damage to 'specified machinery' from a 'machinery accident.'"

47. "Machinery accident" means a sudden and accidental breakdown of "specified machinery" or part of "specified machinery." At the time the "machinery accident" occurs, the "machinery accident" must manifest itself by physical damage to the "specified machinery" that necessitates repair or replacement.

48. "Specified machinery" includes "mechanical or electrical machines or apparatuses used for the generation, transmission or utilization of mechanical or electrical power," and also certain "components of production or process machines or apparatuses," including pump[s], compressor[s], fan[s] or blower[s] that [convey] raw materials, materials in process or finished products."

49. The following are covered losses under the terms and conditions of the Policy:

    a.   The cost of re-excavating, re-preparing, re-grading and re-drilling of wells at the site;

    b.   The cost of filling abandon wells;

    c.   The cost of repairing and/or replacing multiple well pumps; and

    d.   The increased cost of materials, labor and design.

50. Defendant is liable to Plaintiff under the terms of the Policy because the foregoing costs result from damage to "Covered Property" by a "Covered Cause of Loss."

51. Defendant's denial of the claim is contrary to its duties and obligations to Plaintiff under the terms of the Policy, and constitutes a breach thereof.

52. Because an actual controversy exists as to Defendant's liability to Plaintiff under the terms of the Policy, declaration of the parties' respective rights and obligations thereunder with regard to Plaintiffs' pursuit of its claims and claimed damages as set forth elsewhere in this *Complaint*, depends on the Court's answers to these questions and is proper.

WHEREFORE, Plaintiff prays for relief as follows:

    a. An award of compensatory damages in the amount of $287,179.00;
    b. Pre- and Post-Judgment interest pursuant to contract or statute;
    c. Attorney fees and costs per the terms of the contract and/or as permitted by statute; and
    d. Other damages, the extent of which is not known as of the date of this filing.

Dated this 15th day of July, 2010

Respectfully submitted,

HOLLEY, ALBERTSON & POLK, P.C.

/s/ Heather S. Hodgson
Heather S. Hodgson, #33183
Attorneys for Plaintiff
1667 Cole Boulevard, Suite 100
Golden, Colorado 80401
Telephone: 233-7838

Plaintiff's address:

8490 E. Crescent Pkwy.
Suite 250
Greenwood Village, CO 80111

| | |
|---|---|
| DISTRICT COURT, COUNTY OF ARAPAHOE, STATE OF COLORADO<br>7325 S. Potomac Street<br>Centennial, CO 80112 | |
| Plaintiff(s):<br><br>GLACIER CONSTRUCTION COMPANY, a Colorado corporation<br><br>v.<br><br>Defendant(s):<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation | ▲ COURT USE ONLY ▲<br><br>Case Number:<br><br>Div.:          Ctrm.: |
| ATTORNEYS FOR PLAINTIFF:<br>Dennis B. Polk, #8777          dbp@haplaw.net<br>Heather H. Hodgson, #33183     hsh@haplaw.net<br>HOLLEY, ALBERTSON & POLK, P.C.<br>1667 Cole Boulevard, Suite 100<br>Golden, CO 80401<br>Phone: (303) 233-7838<br>Fax: (303) 233-2860 | |
| COMPLAINT | |

COMES NOW the Plaintiff, by and through its attorneys, HOLLEY, ALBERTSON & POLK, P.C., and as and for a Complaint against the Defendant, states, alleges and avers as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Glacier Construction Co. ("Glacier") is a Colorado corporation in good standing with the Colorado Secretary of State, with its principal place of business located in the County of Arapahoe, State of Colorado.

2. Defendant Travelers Property Casualty Company of America ("Travelers") is a Connecticut corporation in good standing with the Connecticut Secretary of State, which maintains a regional office at 6060 South Willow Drive in Greenwood Village, County of Arapahoe, State of Colorado.

3. This Court has jurisdiction over the parties and subject matter of this dispute.

4. Venue is proper in the County of Arapahoe pursuant to C.R.C.P. 98 because Defendant Travelers maintains a regional office in Arapahoe County, and because this matter concerns real property located in Arapahoe County.

## GENERAL ALLEGATIONS

5. Plaintiff is a general contractor specializing in water/wastewater treatment plant and pumping station type of construction.

6. On or about December 8, 2008 the City of Aurora invited Plaintiff and others to submit bids for a project referred to as "Cherry Creek Lift Station No. 15."

7. The invitation to bid described the work to be performed as certain site improvements to Cherry Creek Lift Station No. 15, a new wastewater pumping facility located at the existing site of the Cherry Creek Well Field in Arapahoe County.

8. Plaintiff submitted a bid in response to the invitation.

9. On or about February 3, 2009, Plaintiff received notice that it had been awarded the contract for the Project.

10. Shortly thereafter, Plaintiff entered into a contract with the City of Aurora ("Contract"), whereby Plaintiff agreed to complete the work at the Project pursuant to its bid.

11. Under the terms of the Contract, Plaintiff was required to comply with the City of Aurora's Insurance Requirements which included, *inter alia*, maintaining a comprehensive Commercial General Liability ("CGL") Policy.

12. In addition thereto, Plaintiff maintained a Builder's Risk Policy of Insurance, with a policy number of QT-660-9469B497-TIL-08 and a policy period of 12/01/08 - 12/01/09 (hereinafter the "Policy").

13. Defendant Travelers is the insuring company under the Policy.

14. Plaintiff commenced work at the Project in early March, 2009.

15. In May and June 2009, Plaintiff encountered significant and unexpected ground water dewatering issues during the site preparation phase of the Project.

16. The site contained significantly greater levels of ground water than indicated by the geotechnical investigative reports.

17. The increased water levels caused significant and ongoing problems including, *inter alia*,

the need to re-drill or abandon wells due to collapse, repeated pump failures and repairs, and infiltration of large quantities of sand into the well holes, causing multiple pump failures.

18. Additionally, the ground water issues resulted in the need to design and implement several additional groundwater dewatering measures, and significantly extended Plaintiff's work at the Project.

19. As a result, Plaintiff incurred significantly greater and unanticipated costs in order to complete its work at the Project.

20. On or about July 13, 2009 Plaintiff submitted a claim to Defendant for the loss pursuant to the terms of the Policy.

21. Defendant denied the claim by letter dated December 2, 2009, finding that coverage was not triggered under the terms of the Policy.

22. On or about February 16, 2010 Plaintiff, though counsel, requested that Defendant reconsider its denial of the claim.

23. Plaintiff's request for reconsideration was denied by letter dated March 24, 2010.

24. Plaintiff has complied with all of its duties and obligations under the terms of the Policy, and has complied with all requirements prior to commencement of this claim.

### FIRST CLAIM FOR RELIEF
(Breach of Contract)

25. Plaintiff incorporates, by this reference, paragraphs 1 through 24 as if set forth verbatim.

26. Defendant Travelers issued to Plaintiff a policy of insurance.

27. Despite prior demand for coverage for a covered loss, Defendant Travelers has failed or refused to provide coverage for the loss, and has otherwise failed or refused perform under the terms and provisions of the insurance policy.

28. Defendant Travels has breached its contract with the Plaintiff.

29. As a direct and proximate result of the Defendant Traveler's breach of its agreement with the Plaintiff, the Plaintiff has and continues to suffer damages.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CLAIM FOR RELIEF
(Bad Faith Breach of Contract)

30. Plaintiff incorporates, by this reference paragraphs 1 through 29, as if set forth verbatim.

31. Defendant Travelers owes a duty to the Plaintiff to act in good faith and fair dealing in connection with the submission, processing and handling of claims and owes a duty to indemnify the Plaintiff from loss.

32. Defendant Travelers has breached its duty of good faith and fair dealing in one or more of the following manners:

    A. Failing to properly, adequately or fully indemnify the Plaintiff from covered losses;
    B. Failing to reasonably undertake necessary and proper investigation of claims;
    C. Failing to provide a coverage position within a reasonable time; and
    D. Otherwise failing to act in good faith.

33. Defendant Traveler's breach of its duty of good faith and fair dealing has and continues to cause Plaintiff to suffer damages.

## THIRD CLAIM FOR RELIEF
(Declaratory Judgment)

34. Plaintiffs incorporate by this reference the allegations set forth in paragraphs 1 through 33 as if set forth *verbatim*.

35. Pursuant to C.R.S. § 13-51-106, Colorado's Declaratory Judgment Relief Act, and C.R.C.P. 57, "[a]ny person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

36. By its terms, the Declaratory Judgment Relief Act is intended to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered, and this Court has the power and obligation to declare rights, status and other legal relations of the parties whether or not further relief is or could be claimed, and even in advance of time when litigation might possibly arise or before repudiation of obligation, invasion of rights, or commission of wrongs has occurred.

37. The Declaratory Judgment Relief Act may be employed to determine the liability of an insurance company to its insured under a policy of insurance, arising from a specified occurrence.

38. The Policy at issue is a Builder's Risk policy, and insures Plaintiff against certain covered risks associated with construction activities.

39. The Policy provides, in pertinent part, that Defendant will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of loss.

40. The Policy defines Covered Property as "Builders' Risk."

41. "Builders' Risk" means:

Property described in the Declarations under "Builders' Risk" owned by you or for which you are legally liable consisting of:

   a.  Buildings or structures including temporary structures while being constructed, erected or fabricated at the "job site";

   b.  Property that will become part of the buildings or structures at the "job site";

      (1) While in transit to the "job site" or temporary storage location;

      (2) While at the "Job site" or temporary storage location.

42. "Builders' Risk" does not include:

   a.  Contraband, or property in the course of illegal transit or trade;

   b.  Buildings for structures that existed at the "job site" prior to the inception of this policy;

   c.  Land (including land on which the property is located) or water.

43. The Policy also provides certain Additional Coverages including, *inter alia*, (1) "Builders' Risk" Site Preparation and (2) Expediting Costs and Additional Cost of Construction Materials and Labor.

44. Losses incurred due to "Builders' Risk" Site Preparation are covered if:

      (1) The cost of excavation, site preparation, land grading and similar work is included in the "Basic Limit of Insurance" for the "job site" as shown in the Declarations; and

    (2) You incur expenses to re-excavate the site, re-prepare the site, re-grade the land, or re-perform similar work because of loss of or damage to Covered Property by a Covered Cause of Loss.

45. Additionally, the Policy covers Expediting Costs and Additional Cost of Construction Materials and Labor as follows:

We will pay for the following costs made necessary by a Covered Cause of Loss to Covered Property at the "job site":

    (a)    Your costs to expedite repair of Covered Property;

    (b)    Your increased cost of construction materials and labor; and

    (c)    Your costs to make changes in construction specifications.

46. The Policy excludes coverage for "hidden or latent defect, mechanical breakdown or failure…or any quality in the property that causes it to damage or destroy itself." However, the foregoing exclusion "does not apply to loss of or damage to 'specified machinery' from a 'machinery accident.'"

47. "Machinery accident" means a sudden and accidental breakdown of "specified machinery" or part of "specified machinery." At the time the "machinery accident" occurs, the "machinery accident" must manifest itself by physical damage to the "specified machinery" that necessitates repair or replacement.

48. "Specified machinery" includes "mechanical or electrical machines or apparatuses used for the generation, transmission or utilization of mechanical or electrical power," and also certain "components of production or process machines or apparatuses," including pump[s], compressor[s], fan[s] or blower[s] that [convey] raw materials, materials in process or finished products."

49. The following are covered losses under the terms and conditions of the Policy:

    a.    The cost of re-excavating, re-preparing, re-grading and re-drilling of wells at the site;

    b.    The cost of filling abandon wells;

    c.    The cost of repairing and/or replacing multiple well pumps; and

    d.    The increased cost of materials, labor and design.

50. Defendant is liable to Plaintiff under the terms of the Policy because the foregoing costs result from damage to "Covered Property" by a "Covered Cause of Loss."

51. Defendant's denial of the claim is contrary to its duties and obligations to Plaintiff under the terms of the Policy, and constitutes a breach thereof.

52. Because an actual controversy exists as to Defendant's liability to Plaintiff under the terms of the Policy, declaration of the parties' respective rights and obligations thereunder with regard to Plaintiffs' pursuit of its claims and claimed damages as set forth elsewhere in this *Complaint*, depends on the Court's answers to these questions and is proper.

WHEREFORE, Plaintiff prays for relief as follows:

   a. An award of compensatory damages in the amount of **$287,179.00**;
   b. Pre- and Post-Judgment interest pursuant to contract or statute;
   c. Attorney fees and costs per the terms of the contract and/or as permitted by statute; and
   d. Other damages, the extent of which is not known as of the date of this filing.

Dated this 15th day of July, 2010

Respectfully submitted,

HOLLEY, ALBERTSON & POLK, P.C.

/s/ Heather S. Hodgson
Heather S. Hodgson, #33183
Attorneys for Plaintiff
1667 Cole Boulevard, Suite 100
Golden, Colorado 80401
Telephone: 233-7838

Plaintiff's address:

8490 E. Crescent Pkwy.
Suite 250
Greenwood Village, CO 80111